ORIGINAL

DANIEL T. ASAO
Lot 173 Kamalei Circle
Kahului, HI 96732
Tel: (808) 357-4144

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
SEP 28 2010
at 11 o'clock and 50 min. a M.
SUE BEITIA, CLERK

**UNITED STATES DISTRICT COURT**

**For the**

**DISTRICT OF HAWAII**

DANIEL T. ASAO, an individual;

Plaintiff,

v.

CITI MORTGAGE,INC, a Business Entity, ABN AMRO MORTGAGE GROUP, a Business Entity, form unknown; MAUI CAPITAL GROUP, INC. /DBA/ HAWAII MORTGAGE SOLUTIONS, a Business Entity, form unknown; ISLAND TITLE CORPORATION, a Business Entity, form unknown; and DOES 1-100 inclusive,

Defendants.

Case No.: CV 10 00553 SOM KSC

**COMPLAINT** FOR:

1. DECLARATORY RELIEF;
2. INJUNCTIVE RELEIF;
3. CONTRACTUAL BREACH OF GOOD FAITH FAIR DEALING;
4. VIOLATIONS OF TILA;
5. VIOLATIONS OF RESPA;
6. RECISSION;
7. UNFAIR AND DECEPTIVE ACTS AND PRACTICES (UDAP);
8. BREACH OF FIDUCIARY DUTY;
9. UNCONSCIONABILITY;
10. PREDATORY LENDING;
11. QUIET TITLE
12. LACK OF STANDING (MERS);

EXHIBIT "A" & "B"

**Jury Trial Demanded**

## INTRODUCTION

COMES NOW the Plaintiff DANIEL T. ASAO (hereinafter referred to as "Plaintiff" or "Borrower"), alleges as follows:

**PARTIES**

1. At all times relevant herein, Plaintiff was over the age of eighteen and is and was a resident of the County of Maui, State of Hawaii.

2. The real estate that is the subject of this litigation is Lot 173 Kamalei Circle Kahului, HI 96732, County of Maui. (hereinafter referred to as "Subject Property")

3. Plaintiff purportedly entered into a loan repayment and security agreement on or about, February 6, 2006 with Defendant ABN AMRO MORTGAGE GROUP (hereinafter referred to as "ABN"), which required Plaintiff to repay a refinance loan of $825,000.00 to ABN. The Plaintiff received a "cash-out refinance loan". The terms of the note include a five year "fixed interest rate" that requires payments of the "interest only" ("I/O") with a starting interest rate of 6.375%. Based upon that rate, the initial required monthly payment was $4,382.81. However, after the initial 60 months, the rate will adjust based on the 1 year LIBOR average. The margin is 2.25%, which is average. It will adjust every 12 months thereafter. If the rate adjusted after the first 60 months the full 2% and the loan is amortized over the remaining 25 years, the required monthly payment that Plaintiff would be responsible for would be $6,573.77. If it adjusts by 2 % again the following year, which is likely, the required monthly payment would be $7,715.96. Finally, if the rate increases to its "cap rate" of 11.375% (again, likely), the required monthly payment would be $8,310.57. The payment at the cap rate is almost twice as much as the start rate. The result is "extreme payment shock" to the borrower and creates a financially dire circumstance for Plaintiff.

4. There is no possibility that with Plaintiffs income, reserves and other debts, that he would be able to make an $8,310.57. Defendants were aware (or should have been aware) of this fact, and never funded such an astronomically high risk loan program. The loan is purportedly secured by the Subject Property.

5. Plaintiff is informed and therefore alleges that Defendant ABN, a Business Entity, form unknown, is a corporation, authorized to do business in the State of Hawaii. ABN was the original mortgage lender for the loan, with a business address of: 2600 W. Big Beaver Rd., Troy, MI 48084.

6. Plaintiff is informed and therefore alleges that Defendant MAUI CAPITAL GROUP, INC. DBA/ HAWAII MORTGAGE SOLUTIONS (hereinafter referred to as "MAUI"), a Business Entity, form unknown, is a corporation, authorized to do business in the State of Hawaii. MAUI was the original mortgage broker for the loan, with an unknown business address.

7. Plaintiff is informed and therefore alleges that Defendant ISLAND TITLE CORPORATION (hereinafter referred to as "ISLAND"), a Business Entity, form unknown, is a corporation, authorized to do business in the State of Hawaii. ISLAND is the original escrow/title company for the loan, with a business address of, 1325 South Kihei Rd. #205, Kihei, HI 96753.

8. The Defendants (each of them named in paragraphs 1 through 5 above, shall collectively be referred to as "DEFENDANTS") named herein "all persons unknown", claiming any legal or equitable right, title estate, lien or interest in the property described in this Complaint adverse to Plaintiff' title thereto and as DOES I through 100 (hereinafter referred to as "UNKNOWN DEFENDANTS") are unknown to Plaintiff. These unknown Defendants and each of them claim some right, title, estate, lien or interest in the Subject Property hereinafter described adverse to Plaintiff' title and their claims and each of them constitute a cloud on Plaintiff' title to the Subject Property. Plaintiff are informed and therefore believe, and on that basis allege that each fictitiously named herein as a DOE is responsible for the events happening hereinafter alleged. Plaintiff will seek leave of the Court to amend this Complaint to allege the true names and capacities of said fictitiously named Defendant's when ascertained.

9. Plaintiff is informed and therefore believes and on that basis alleges that at all times mentioned herein, the UNKNOWN DEFENDANTS are individuals and/or business entities whose forms are unknown and were agents, principals, employees, employers and co-conspirators of each and every other named or unnamed Defendant in this Complaint. Plaintiff is informed and therefore alleges that each of said Defendants is and at all relevant times herein, was acting within the scope and consent of the remaining named and unnamed Defendants.

10. Whenever in this Complaint an act or omission of a corporation or business entity is alleged, the allegation shall be deemed to mean and include an allegation that the corporation or business entity acted or omitted to act through its authorized officers, directors, agents, servants, and/or employees, acting within the course and scope of their duties, that the act or omission was authorized by corporate managerial officers or directors, and that the act or omission was ratified by the officers and directors of the corporation or business entity.

11. Defendants, and each of them, failed to provide the requisite Federal forms and disclosures including but not limited to the Truth In Lending Act, Equal Opportunity Credit Act, Fair Lending/Fair Debt Collection Act as well as others.

12. It is also the responsibility of the lender and brokers to verify that the borrower has the ability to repay the credit that has been extended. A departure from the fundamental principles of loan underwriting will form the basis of abusive lending. Lending without a determination that a borrower can reasonably be expected to repay the loan from resources other than the collateral securing the loan, and relying instead on the foreclosure value of the borrower's collateral to recover principal, interest and fees. The underwriting on this loan was severely flawed. There was no determination of the borrower to repay the loan, with complete disregard for the Guidance Letters issued by Federal Agencies and even Federal and State Law.

13. As a result of their mortgage activities, Defendants and each of them are and were subject to and must comply with the Federal Truth In Lending Act (hereinafter referred to as "TILA")[15 U.S.C. §1601-16666j]; [24 C.F.R § 3500.1-3500.17]; the Real Estate Settlement Procedures Act (hereinafter referred to as "RESPA")[12 U.S.C. § 2601 et.seq.]; 24 Code of Federal Regulations § 3500.10; § 10241.3; Unfair and Deceptive Business Practices and Acts [UDAP Statutes]; among others.

**JURISDICTION**

14. The transactions and events which are the subject matter of this Complaint all occurred within the County of Maui, State of Hawaii.

15. The Subject Property, is located within the County of Maui, State of Hawaii.

**FACTUAL ALLEGATIONS**

16. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

17. For years, mortgage brokers and lenders have been selling loan products that they knew or should have known would never be able to be repaid by the borrower and would prevent borrowers from ever actually owning the home. Instead, borrowers were offered interest-only, negative amortization, and/or other subprime loan products that amounted to no more than a short term lease until the payments became so unaffordable that the borrowers are now faced with either bankruptcy or foreclosure. The housing bubble of the past decade was created by predatory lending practices, such as charging excessive fees, incorporating payment penalties, negative amortization payments, or other abusive terms in the agreements, providing kickbacks to brokers, flipping loans, using balloon payments to conceal the true burden of the financing, requiring unnecessary insurance and other products, including mandatory arbitration clauses, steering borrowers to subprime loans

when they qualify for conventional loans, and using bait and switch tactics. All were rampant within the industry without oversight or good judgment and found to be inconsistent with important national objectives, including the goals of fair access to credit, ABN development, and stable homeownership by the broadest spectrum of America. Rather than offering a loan product that was viable and long-term for the borrower and lender, brokers and lenders greedily sold whatever they could get away with, arguably the primary catalyst for what is now this country's worst economic crisis since the Great Depression.

18. The loan product sold to Plaintiff in this case was exactly the kind of loan that has contributed to our national problem. The Defendants were aware of this trend, and possessed the foresight to advise Plaintiff of this risk. They intentionally concealed the negative implications of the loan they were offering, and as a result, Plaintiff face the potential of losing their home to the very entity and entities who placed them in this position.

19. Further liability exists on the part of ABN because under the Federal Truth In Lending Act § 1640, if any violation by ABN that occurred (before its transfer of servicing rights or any other alleged owner of the Deed of Trust after the date of origination of the ABN loan), were apparent on the face of the disclosures, then assignee liability exists. For example, in Cazares v Pacific Shore Funding, C.D. Cal. 1/ 3/2006, an assignee that actively participated in original lender's act and dictated loan terms may be liable under UDAP statutes. The purchase and/or receipt of the above referenced "closed" loan from any subsequent purchaser, including at a non-judicial foreclosure sale, does not absolve ABN of liability for the numerous State and Federal violations that have occurred, and have placed Plaintiff in a prejudicial position in regard to his legal rights.

20. Each subsequent Defendant who has participated in, been assigned or been transferred Rights, or holds a position or interest under loan agreement, including ABN, MAUI,

ISLAND and UNKNOWN DEFENDANTS (hereinafter referred to collectively as "Defendants") failed to perform their due diligence in investigation the legal requirements that this loan should have been processed within. As a result, Defendants now hold an interest in a loan that was improperly handled from its inception.

21. The terms of the finance transaction with ABN are not clear or conspicuous, nor consistent, and are illegal, and include, for example, extremely high ratios with respect to Plaintiff's Income and Liabilities. Plaintiff was given a loan that was an inappropriate loan. The loan was more expensive in terms of fees, charges and or interest rates than alternative financing for which Plaintiff could have qualified. The terms of the loan given to Plaintiff are such that they can never realistically repay the loan.

22. MAUI received a Yield Spread Premium ("YSP") of $2,062.50 from ABN. To earn a Yield Spread Premium the broker will increase the interest rate that the borrower will pay. It takes a borrower about three years to repay the Yield Spread Premium. Once the three year repayment period has ended, the interest rate does not drop. Instead, the borrower continues to pay at the same interest rate and the lender reaps the benefits of the higher payment. Yield Spread Premium significantly affects the borrower's payment and financial situation.

23. MAUI was also paid $14,967.50 in fees. This loan required the borrower to pay interest rates, fees and/or charges not justified by marketplace economics in place at the time the lien was originated.

24. As discussed, ABN enjoyed the benefits of Unjust Enrichment from receiving a "discount fee" in the amount of $2,062.50, as well as excessive, unjustified fees, which is classified as an unearned fee under RESPA. *12 CFR sec. 226.4(a), 226.17, and 18(d) and (c) (1) (iii).*

25. Under the EOCA, a borrower is entitled to the same terms of credit issuance that another

borrower of equal characteristics is entitled to. Here, ABN placed Plaintiff into a loan that had a significantly higher interest rate than what was qualified for. This was partly a result of paying more fees which only benefited Defendants.

26. These acts of deception violate several statutes and is in essence creates an illegal loan. Further, this loan was underwritten without proper due diligence by ABN as evidenced by their failure to verify borrower's income utilizing signed IRS Income Tax Disclosure Form 4506T which would have provided past borrower tax returns nor verify income or employment.

27. In addition, Underwriting standards at this time were never based on the cap rate of the loan, therefore putting the borrowers in harm's way as it is very realistic that the cap rate will be reached during the life of the loan.

28. Unbeknownst to Plaintiff, ABN illegally, deceptively and/or otherwise unjustly, qualified Plaintiff for a loan which ABN knew or should have known that Plaintiff could not qualify for or afford by, for example, the underwriter has approved this loan based upon credit scores and the borrower's Stated Income only. Had ABN used a more accurate and appropriate factor, such as Tax Forms and a more determinative level of scrutiny of determining the debt to income ratio, Plaintiff would not have qualified for the loan in the first place.

29. ABN sold Plaintiff a loan product that it knew or should have known would never be able to be fully paid back by Plaintiff. ABN ignored long-standing economic principals of underwriting and instead, knowingly, liberally, greedily and without any regard for Plaintiff' rights sold Plaintiff a deceptive loan product.

30. There was no determination of the ability of the borrower to repay the loan, with complete disregard for the Guidance Letters issued by Federal Agencies and even Federal and State Law.

31. Defendants, and each of them, neither explained the workings of the entire mortgage loan transaction, how the rates, finance charges, costs and fees were computed, nor the inherent volatility of the loan product(s) provided by Defendants.

32. This loan was a "stated income" loan wherein DEFENDANTS were unable to accurately or reasonably determine if the Plaintiff could qualify for the home loan. This lack of diligence is the primary reason Plaintiff find themselves in the position they do. The Defendants herein were aware of this probable outcome. The Plaintiff was not.

**33.** The Defendants utilized excessive fees that are actionable for treble damages pursuant to **12 U.S.C. §2607.**

34. The purpose of entering into the above-described mortgage loan transactions was for Plaintiff to eventually own the Subject Property. That purpose was knowingly and intentionally thwarted and indeed made impossible by Defendants' actions alleged herein.

35. An expert, certified, FORENSIC LOAN AUDIT, requested by FRANCHA SERVICES, LLC, authorized to do business in the State of Hawaii, ordered by Plaintiff. **Attached hereto is <u>Exhibit "A"</u>- Certified Forensic Loan Audit.** Plaintiff's loan documents revealed the following legal violations which were incurred during the handling and processing of Plaintiff' loan:

36. Plaintiff is informed and believes and therefore alleges that the underwriter approved this loan based only upon a stated income and a medium to high risk credit score and a belief that the property would continue to increase in value and that the Plaintiff should have been declined for this loan.

37. Plaintiff is informed and believes and therefore alleges that based on a Real Income Analysis, with the type of take home income Plaintiff possesses and that was clearly disclosed to

Defendants, that the Plaintiff would not be able to support the home payment over an extended period.

38. Plaintiff is informed and believes and therefore alleges that Defendants failed to provide Plaintiff with written notice of the furnishing of negative credit information to consumer reporting agency after Defendants furnished such negative credit information about Plaintiff.

39. Plaintiff is informed and believes and therefore alleges that Defendants placed Plaintiff in a loan in which Plaintiff's first payment was due within thirty days of the loan funding. This created a hardship and required a separate disclosure regarding the hardship.

40. Plaintiff is informed and believes and therefore alleges that Defendants provided Plaintiff with a thirty day Hardship Letter evidencing the rushed nature of the loan. The presence of this document is consistent with Defendants' failure to provide the Plaintiff with notice of the costs or integral features of the loan until the very last second. Subsequently, Defendants closed the loan immediately prior to Plaintiff's ability to understand the loan and question the costs or the interest only feature.

41. Plaintiff is informed and believes and therefore alleges that Defendants breached their fiduciary duty to Plaintiff because they knew or should have known that the Plaintiff would or had a strong likelihood of defaulting on this loan, they have a fiduciary duty to the Plaintiff to not place Plaintiff in that loan (in harm's way).

42. Plaintiff is informed and believes and therefore alleges that it was in the best interest of Defendants to promote the particular program for which they approved Plaintiff. It led to a maximization of profits for the Defendants, with no concern for the Plaintiff's financial position or livelihood.

43. Plaintiff is informed and believes and therefore alleges that as a result of the practices of Defendants, and each of them throughout the handling of this loan, that such practices are consistent with the definition of predatory lending, and encompass numerous characteristics that indicate such.

44. Plaintiff is informed and believes and therefore alleges that Defendants provided inadequate disclosure of the true costs, risks and, where necessary, appropriateness to the borrower of loan transactions in violation of the **Federal Trade Commission Act**. The **Defendant (Citi Mortgage, Inc.),** failed to respond a Qualified Written Request sent by via certified mail requested by Plaintiff (Daniel T. Asao) to provide all the necessary documents including the assignments, transferred of the promissory note, or other necessary documents to prove to the Plaintiff that Defendant (Citi Mortgage, Inc. ) have the right to collect payments from Plaintiff (Daniel Asao. **After 20 days of not responding they violated RESPA Real Estate Settlement Procedures Act [12 U.S.C. §2601].** So, therefore the DEBT is NOT VALID, attached hereto is **Exhibit "B" Qualified Written Request.**

45. Plaintiff is informed and believes and therefore alleges that Defendants engaged in unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising in violation, rising to unfair and deceptive business practices, in violation of the Unfair and Deceptive Acts and Practices statutes.

## COUNT I

### Declaratory Relief

### (Against All Defendants)

46. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

47. An actual controversy has arisen and now exists between Plaintiff and Defendants regarding their respective rights and duties, in that Plaintiff contends that Defendants did not have the right to foreclose on the Subject Property because Defendants' security interest in the Subject **Property has been rendered void by operation of law, pursuant to 24 Code of Federal Regulations 3500.10, UDAP, TILA and RESPA**. Thus the purported power of sale by Defendants no longer applies. Plaintiff further contends that Defendants do not have the right to foreclose on the Subject Property because Defendants did not properly comply with proper delivery procedures under RESPA. Plaintiff further contends that the Defendants perpetrated a fraudulent loan transaction.

48. Plaintiff requests that this Court find the purported any power of sale or foreclosure proceedings contained in the Loan of no force and effect at this time, because Defendants actions in the processing, handling and attempted foreclosure of this loan has contained numerous violations of State and Federal laws designed to protect borrowers, which has directly caused Plaintiff to be at an equitable disadvantage to Defendants. Plaintiff further requests that title to the Subject Property remain in Plaintiff's name forever, with said Deed of Trust remaining in beneficiaries' name, during the pendency of this litigation.

49. As a result of the Defendants' actions, Plaintiff has suffered damages according to proof, and seeks declaratory relief that Defendants' purported power of sale is void and has no force or effect against the Subject Property.

50. Further, Defendants' actions have been willful, knowing and malicious.

WHEREFORE, Plaintiff prays for relief as set forth below.

**COUNT II**

**Injunctive Relief**

**(Against All Defendants)**

51. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

52. Defendants have commenced a foreclosure action under the Note and have scheduled or will schedule a non-judicial sale. Said sale will cause Plaintiff great and irreparable injury in that real property is unique.

53. The wrongful conduct of Defendants, unless restrained and enjoined by an order of the court, will cause great and irreparable harm to Plaintiff. Plaintiff will not have the beneficial use and enjoyment of the property and will lose his home.

54. Plaintiff has no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to Plaintiff. Plaintiff has suffered and will continue to suffer in the future unless Defendants' wrongful conduct is restrained and enjoined because real property is inherently unique and it is and will be impossible for Plaintiff to determine the precise amount of damage Plaintiff will suffer.

WHEREFORE, Plaintiff prays for relief as set forth below.

**COUNT III**

**Contractual Breach of Implied Covenant of Good Faith and Fair Dealing**

**(Against All Defendants)**

55. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

56. Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits of their agreement. The covenant implies that in all contracts

each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose. This covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement.

57. The terms of the Loan imposed upon Defendants a duty of good faith and fair dealing in this matter.

58. Defendants enjoyed substantial discretionary power affecting the rights of Plaintiff during the events alleged in this Complaint. Defendants were required to exercise such power in good faith.

59. Defendants willfully breached their implied covenant of good faith and fair dealing with Plaintiff when Defendants:

I. Willfully withheld numerous disclosures;

II. Willfully withheld notices in regard to excessive fees and closing costs; below standard and non-diligent underwriting standards, Good Faith Estimates, Yield Spread Premiums, Disclosures of additional income due to interest rate increases, and failure to disclose when negative credit scores were disseminated; and failure to provide disclosures of business affiliations, kickback fees, and Rescission/Right to Cancel Disclosures;

III. Willfully placed Plaintiff in a loan that he did not qualify for, could not afford, and subjected them to further financial detriment, while providing Defendants with financial benefits they would not have otherwise enjoyed.

60. As a result of Defendants' breach of this covenant, Plaintiff has suffered injury and have

caused Plaintiff the threat of loss of his home. Plaintiff has incurred and continues to incur legal fees, including attorney fees and costs, as well as expenses to right this wrong.

61. Defendants' actions in this matter have been willful, knowing, malicious, fraudulent and oppressive, entitling Plaintiff to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in the same behavior.

WHEREFORE, Plaintiff prays for relief as set forth below.

**COUNT IV**

**Violation of TILA, 15 U.S.C. § 1601, et.seq.**

**(Against All Defendants)**

62. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

63. The Truth In Lending Act (TILA) applies because the transaction involves the extension of credit to a consumer for personal, family or household purposes that is subject to a finance charge and/or payable by written agreement in more than four installments per 15 U.S.C. §§ 1601-1666j.

64. DEFENDANTS failed to issue TILA initial disclosures as mandated. The failure to provide these disclosures would ensure that the Plaintiff had no idea what the loan he was being offered, or the details of the loan. The Plaintiff would then be placed in a serious disadvantage as to getting a loan beneficial to his interest.

65. ABN failed to provide Plaintiff with a properly disclosed interest rate, an accurate Good Faith Estimate, disclosures that accurately reflected the legal obligation between the parties, or a disclosure relating to Property/Hazard Insurance, which are all required under the Code of Federal Regulations.

66. Any and all statute[s] of limitations relating to disclosures and notices required pursuant to 15 U.S.C. § 1601, et.seq. were tolled due to Defendants' failure to effectively provide the required disclosures and notices.

67. An actual controversy now exists between Plaintiff, who contends he has the right to rescind the loan on the Subject Property alleged in this Complaint, and based on information and belief, Defendants deny that right.

68. As a direct and proximate result of Defendants' violations Plaintiff has incurred and continues to incur damages in an amount according to proof but not yet ascertained including without limitation, statutory damages and all amounts paid or to be paid in connection with the transaction.

69. Defendants were unjustly enriched at the expense of Plaintiff who is therefore entitled to equitable restitution and disgorgement of profits obtained by Defendants.

70. Defendants' actions in this matter have been willful, knowing, malicious, fraudulent and oppressive, entitling Plaintiff to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in the same behavior.

WHEREFORE, Plaintiff prays for relief as set forth below.

**COUNT V**

**Violation of Real Estate Settlement and Procedures Act (RESPA)**

**(Against All Defendants)**

71. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

72. RESPA applies because a lender that regularly extends federally related mortgage loans aggregating more than $1 million per year, and intended for the purchase of a one- to four-family residential property are subject to RESPA per 12 U.S.C. §§ 2601-2617

73. Housing and Urban Development's (HUD's) 1999 Statement of Policy established a two-part test for determining the legality of lender payments to mortgage brokers for table funded transactions and intermediary transactions under RESPA:

> (1) Whether goods or facilities were actually furnished or services were actually performed for the compensation paid and;
>
> (2) Whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed.

74. In applying this test, HUD believes that total compensation should be scrutinized to assure that it is reasonably related to the goods, facilities, or services furnished or performed to determine whether it is legal under RESPA.

75. Defendants gave, provided or received a hidden fee or thing of value for the referral of settlement business, including but not limited to, kickbacks, hidden referral fees, and/or loan origination fees.

76. MAUI was also paid $14,967.50 in fees. This loan required the borrower to pay interest rates, fees and/or charges not justified by marketplace economics in place at the time the lien was originated.

77. MAUI received a Yield Spread Premium ("YSP") of $2,062.50 from ABN.

78. Defendants failed to disclose all affiliated business arrangements to Plaintiff.

79. Defendants charged fees in excess of the reasonable value of goods provided and/or

services rendered exemplified by Plaintiff being charged over 3.0% of the loan amount in lender fees alone.

80. As a proximate result of Defendants' actions, Plaintiff has been damaged in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

**COUNT VI**

**Rescission**

**(Against All Defendants)**

81. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

82. Plaintiff is entitled to rescind the loan for all of the foregoing reasons: 1) TILA Violations; 2) RESPA; 3) Fraudulent Concealment; 4) Deceptive Acts and Practices (UDAP) and 5) Public Policy Grounds, each of which provides independent grounds for relief.

83. The Truth In Lending Act, 15 U.S.C §1601, et.seq. extends Plaintiff's right to rescind a loan to three years from the date of closing if the borrower received false or incomplete disclosures of either the loans terms or Plaintiff's right to rescind. Here, Defendants have failed to properly disclose the details of the loan. Specifically, the initial TIL disclosures and lack of diligence and collusion on the part of the Defendants to place Plaintiff in a loan he could not afford and would ultimately benefit Defendants.

84. The public interest would be prejudiced by permitting the alleged contract to stand; Such action would regard an unscrupulous lender.

85. As a proximate result of Defendants' actions, Plaintiff has been damaged in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiff prays for rescission of the stated loan in its entirety.

## COUNT VII

## Unfair And Deceptive Business Act Practices (UDAP)

## (Against All Defendants)

86. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

87. Defendants failed to undergo a diligent underwriting process for this loan as alleged in this complaint. They also failed to properly adjust and disclose facts and circumstances relating to Plaintiff' mortgage loan and placed Plaintiff in a loan, by way of stated income and misleading facts, which he should never have been approved for because he could not afford it. Defendants did have that knowledge of these facts, circumstances and risks but failed to disclose them.

88. Defendants used various rates and charges to disguise the actual payment schedule and loan amount. The Defendants enjoyed unjust enrichment and have profited and deceptively preyed upon Plaintiff and his naïve nature in the industry.

89. Defendant's intentionally concealed business affiliates and rushed the closing to procure the loan without Plaintiff' potential rescission.

90. By reason of Defendants fraudulent, deceptive, unfair, and other wrongful conduct as herein alleged, said Defendant has violated the Unfair and Deceptive Acts and Practices by consummating an unlawful, unfair, and fraudulent business practice, designed to deprive Plaintiff of her home, equity, as well as his past and future investment.

91. By reason of the foregoing, Plaintiff has suffered and continues to suffer damages in a sum which is, as yet unascertained.

WHEREFORE, Plaintiff prays for relief as set forth below.

**COUNT VIII**

**Breach of Fiduciary Duty**

**(Against Defendants)**

92. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

93. Defendants owed a fiduciary duty to Plaintiff and breached that duty by ailing to advise or notify Plaintiff when Defendants knew or should have known that Plaintiff would or had a likelihood of defaulting on the loan, Defendants have a fiduciary duty to the borrower to not place them in that loan (in harm's way).

94. Defendants have a fiduciary duty to the Plaintiff, however here, they exercised a greater level of loyalty to each other by providing each other with financial advantages under the loan without disclosing their relation to one another to Plaintiff.

95. Defendants failed to provide material disclosures regarding the loan and its interest rate to Plaintiff while in the capacity of Plaintiff's Lender.

96. Defendants failed to fully comply with TILA and RESPA regulations and laws designated to protect Plaintiff. The failure to do so placed Plaintiff in a serious disadvantage and potential loss of their home. Such actions are violations of a fiduciary responsibility owed to Plaintiff by Defendants.

WHEREFORE, Plaintiff prays for relief as set forth below.

**COUNT IX**

**Unconscionability – UCC-2-3202**

**(Against All Defendants)**

97. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

98. If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

99. When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

100. Here, based on the deception, unfair bargaining position, lack of adherence to the regulations, civil codes and federal standards that the Defendants were required to follow; coupled with the windfall that the Defendants reaped financially from their predatory practices upon Plaintiff, the court may find that the loan agreement and trust deed are unconscionable and of no force or effect.

WHEREFORE, Plaintiff prays for restitution and relief as set forth below.

**COUNT X**

**Predatory Lending**

**(Against All Defendants)**

101. Plaintiff re-alleges and incorporate by reference all preceding paragraphs as though fully set forth herein.

102. The Office of Comptroller of the Currency defines Predatory Lending as any lien

secured by real estate which shares well known common characteristics that result in Unfair and Deceptive Business Practices.

103. Acts undertaken by the Defendants here that are consistent with the Office of the Comptroller's definition include the fact that this loan was marketed in a way which fails to fully disclose all material terms and includes terms and provisions which are unfair, fraudulent or unconscionable;

104. Additionally, this loan is marketed in whole or in part on the basis of fraud, exaggeration, misrepresentation or the concealment of a material fact and was underwritten without due diligence by the party originating the loan;

105. The loan included excessive closing fees and costs, including $14,967.50 in fees., along with interest-only payments.

106. Defendants used a tactic known as "bait and switch" which is the practice of offering a loan at one rate and then changing the loan program at the last moment. This technique used by Defendants included the absence of integral documents including: good faith estimates, TIL disclosures, and estimated and final settlement statements. In addition, the loan documents had to be redrawn at the last minute.

107. The loan does not does not plainly and prominently disclose on the good faith estimate of closing costs. Further, Plaintiff was not advised of business affiliations among Defendants nor were they advised of the fees charged.

108. Defendants required Plaintiff to pay interest rates, fees and/or charges that were not justified by marketplace economics in place at the time the lien was originated.

109. This loan is marketed in a way that fails to fully disclose all material terms. It also

does not include any terms or provisions which are unfair, fraudulent or unconscionable. It is marketed in whole or in part on the basis of fraud, exaggeration, misrepresentation or the concealment of a material fact. Includes interest only loans, adjustable rate loans, negative amortization and HOEPA loans.

110. This loan is based on a loan application that is inappropriate for the borrower. For instance, the use of a stated-income loan application from an employed individual who has or can obtain pay stubs, W-2 forms and tax returns.

111. The excessive fees charged were not applied toward giving the Plaintiff a low rate fixed loan. Defendants failed to provide Plaintiff with an explanation as to why he was paying for the costs associated with a premium loan while not receiving a premium loan.

112. This loan is underwritten without due diligence by the party originating the loan. No realistic means test for determining the ability to repay the loan. Lack of documentation of income or assets, job verification. Usually with Stated Income or No documentation loans, but can apply to full documentation loans.

113. This loan is underwritten without due diligence by the party originating the loan. There has been no realistic means test for determining the ability of the borrowers to repay the loan. Further, there is a lack of documentation of income or assets and/or job verification.

WHEREFORE, Plaintiff prays for relief as set forth below.

**COUNT XI**

**Quiet Title**

**(All Defendants Claiming Any Interest In the Subject Property)**

114. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

115. Plaintiff is at all times herein mentioned the owner and/or entitled to possession of the Property, until the date of sale that transferred physical possession of the deed of trust to the non-bonafide subsequent purchaser.

116. Plaintiff is informed and therefore believes and thereupon alleges that Defendants, and each of them, claim an interest in the Subject Property adverse to Plaintiff. However, as a result of the conduct more fully described in the preceding allegations, the claim of Defendants is without any right whatsoever, and said Defendants have no legal or equitable right, claim, or interest in the Property.

117. Plaintiff therefore seeks a declaration that the title to the Subject Property is vested in Plaintiff alone and that the Defendants herein, and each of them, be declared to have no estate, right, title or interest in the Subject Property and that said Defendants, and each of them, be forever enjoined from asserting any estate, right, title or interest in the Subject Property adverse to Plaintiff.

WHEREFORE, Plaintiff pray for relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff will ask for the following for each Cause of Action sustained:

1. For Compensatory Damages in an amount to be determined by proof at trial.
2. For Special Damages in an amount to be determined by proof at trial.
3. For General Damages in an amount to be determined by proof at trial.
4. For Treble Damages in an amount to be determined by proof at trial.
5. For Punitive Damages as against the individual Defendants.
6. For Attorney's Fees and Costs of this action.
7. For Declaratory Relief, including a declaration that Plaintiff is the prevailing party.
8. For an Injunction, enjoining any foreclosure proceeding on the Subject Property.
9. For a judgment rescinding the Loan and Security Agreement and setting forth terms of restitution.

10. For a judgment ordering that the Defendants provide proof of authority to foreclose by producing the promissory note.
11. Quiet Title.
12. For any prejudgment or other interest according to law.
13. Any other and further relief that the Court considers just and proper.

September 28, 2010

DANIEL T. ASAO
Lot 173 Kamalei Circle
Kahului, HI 96732
Tel: (808) 357-4144