# FRANCHA SERVICES, LLC
# 1975 VINEYARD STREET, SUITE#303
# WAILUKU, HI 96793

## Forensic Audit Report

**Prepared for:**

**Borrower(s):** Daniel T. Asao
**Property:** Lot 173 Kamalei Circle Kahului, HI 96732

NATIONAL ASSOCIATION OF MORTGAGE UNDERWRITERS
NAMU

**March 15, 2010**



EXHIBIT "A"

# TABLE OF CONTENTS


Advisory Letter 3

Introduction 4

*Report Summary* 5

Summary of Loan Terms 7

Financial & Underwriting Analysis 8

Truth in Lending Act Analysis 10

HOEPA 12

RESPA Analysis 13

Predatory Indicators 14

Potential Additional Claims Analysis 16

- Discrimination
- Fraud
- Breach of Contract
- Breach of Implied Covenant of Fair Dealing
- Breach of Fiduciary Duty
- Unjust Enrichment
- Unconscionability
- Civil Conspiracy
- Unfair/Deceptive Business Practices

Other Claims & Recommended Legal Research 18

3/15/2010

Edna Franco
Francha Services, LLC

Re: Forensic Audit for Daniel T. Asao
Loan # 654320057

Dear Francha Services, LLC,

The loan transaction for the above-referenced borrower/property has been audited[1] for violations of the Truth in Lending Act [16 U.S.C. §1601] ("TILA"), Home Ownership Equity Protection Act [12 C.F.R. 226.32 *et seq.*] ("HOEPA"), the Real Estate Settlement Procedures Act [12 U.S.C. §2601] ("RESPA"), and to the extent applicable, violations of other state and federal laws discussed below.

This report was based exclusively on the documentation provided. It also required that we make reasonable assumptions respecting disclosures and certain loan terms that, if erroneous, may result in material differences between our findings and the loan's actual compliance with applicable regulatory requirements. While we believe that our assumptions provide a reasonable basis for the review results, we make no representations or warranties respecting the appropriateness of our assumptions, the completeness of the information considered, or the accuracy of the findings.

The contents of this report are being provided with the understanding that we are not providing legal advice, nor do we have any relationship, contractual or otherwise, with anyone other than the recipient. We do not, in providing this report, accept or assume responsibility for any other purpose.

Sincerely,

Marla Giddings

**Marla Giddings**
**Certified Senior Forensic Loan Auditor**

**INTRODUCTION**
**Interested Parties**:

| ORIGINAL MORTGAGE LENDER/TABLE FUNDER: | ESCROW/TITLE: | MORTGAGE NOMINEE/BENEFICIARY: |
|---|---|---|
| ABN AMRO Mortgage Group<br>2600 W. Big Beaver Rd.<br>Troy, MI 48084 | Island Title Corporation<br>1325 South Kihea Rd. #205<br>Kihea, HI 96753 | |
| **MORTGAGE BROKER:** | **MORTGAGE TRUSTEE:** | **SECURITIZATION:** |
| Maui Capital Group, Inc. dba<br>Hawaii Mortgage Solutions | | Likely.<br>See discussion below. |

**Documents Provided for Review**:

| 1st | 2nd | |
|---|---|---|
| | | Loan Application (Form 1003) MISSING |
| | | Loan Commitment Letter MISSING |
| | | Good Faith Estimate MISSING |
| | | Truth in Lending Disclosure Statement MISSING |
| | | (3-Day) Notice of Right to Cancel (may not find with purchase money loans) |
| X | | HUD-1 (or HUD-1A) Settlement Statement MISSING |
| X | | Note (with riders or attachments) |
| X | | Deed of Trust (Mortgage) |
| | | Underwriting and Transmittal Summary (Form 1008) MISSING |
| | | Appraisal Report MISSING |
| | | RESPA servicing disclosure MISSING |
| | | Hazard Insurance disclosure MISSING |
| | | Credit score disclosure MISSING |
| | | Lender's Closing Instructions MISSING |
| | | Affiliated Business Arrangement Disclosure MISSING |
| | | I/O and/or Neg-Am disclosure MISSING |
| | | ARM disclosure MISSING |

**REPORT SUMMARY**

Total Potential TILA Violations (see p. 10):9

Total Potential HOEPA Violations (see p. 12): 0

Total Potential RESPA Violations (see p. 13): 5

Total Potential PREDATORY Violations (see p. 14): 6

| CLAIM | CONCLUSION | DETAILS |
|---|---|---|
| **Underwriting** | FAIL | See p. 8. |
| **TILA APR Tolerance Test** | TBD | See pp. 10. |
| **TILA Finance Charge Test** | TBD | See pp. 10. |
| **TILA Right of Rescission** | FAIL | See pp. 10. |
| **Predatory Indicators** | FAIL | See p. 14. |
| **Discrimination*** | POSSIBLE | See discussion at p. 15. |
| | | |
| **Fraud*** | POSSIBLE | See discussion at p. 15. |
| **Other State/Common Law Claims*** | POSSIBLE | See discussion at p. 15-27. |

*(Probability of Violations Ratings: No Evidence or Possible)

Auditor's Summary

**This loan is a cash-out refinance. The terms of the note are as follows: Five year fixed rate interest only with a start rate of 6.375%. Initial payment is $4382.81. After the initial 60 months, the rate can adjust based on the 1 year LIBOR average. The margin is 2.25%, which is average. It can adjust every 12 months thereafter. It cannot adjust more than 2% per annum and can never go above 11.375%. If the rate adjusted after the first 60 months the full 2% and the loan is amortized over the remaining 25 years, the payment would be $6573.77. If it adjusts by 2 % again the following year, the following year, the payment would be $7715.96. At the cap rate of 11.375%, the payment would be $8310.57. The payment at the cap rate is almost twice as much as the start rate. This is EXTREME PAYMENT SHOCK! Underwriting standards at this time were never based on the cap rate of the loan, therefore putting the borrowers in harms way as it is very realistic that the cap rate will be reached during the life of the loan.**

**Underwriting Standards, It is the responsibility of the lender to verify that the borrower has the ability to repay the credit that has been extended. A departure from the fundamental principles of loan underwriting generally forms the basis of abusive lending. Lending without a determination that a borrower can reasonably be expected to repay the loan from resources other than the collateral securing the loan, and relying instead on the foreclosure value of the borrower's collateral to recover principal , interest and fees. The underwriting on this loan was flawed. There was no determination of the borrower to repay the loan, with complete disregard for the Guidance Letters issued by Federal**

Agencies and even Federal and State Law. This disregard for the borrower leads to the potential for legal action under many different legal statutes, UDAP laws, and common law principles.

**Predatory Lending**

Equity Stripping. The borrowers pulled out cash with this loan totaling $66,777.99. Additional leveraging of the home could increase the borrowers monthly payment.

Yield Spread Premium. The broker received a Yield Spread Premium of $2,062.50 from ABN Amro Mortgage Group, Inc. To earn a Yield Spread Premium the broker will increase the interest rate that the borrower will pay. It takes a borrower about three years to repay the Yield Spread Premium. Once the three year repayment period has ended, the interest rate does not drop. Instead, the borrower continues to pay at the same interest rate and the lender reaps the benefits of the higher payment. Yield Spread Premium significantly affects the borrower's payment and financial situation. Absent the presence of a separate fee agreement regarding Yield Spread Premium and that the borrower agreed to pay such an excessive amount to the broker, and in evaluating the Yield Spread Premium using the HUD 2 part test, it is the contention of the auditor that the broker and the lender have enjoyed the benefits of Unjust Enrichment as well as unearned fees under RESPA. 12 CFR sec. 226.4(a), 226.17, and 18(d) and (c) (1) (iii) Under the EOCA, a borrower is entitled to the same terms of credit issuance that another borrower of equal characteristics is entitled to. The lender placed borrower into a loan that had a significantly higher interest rate than what was qualified for. This was a result of paying a Yield Spread Premium to the broker (which benefited the lender).

Excessive Loan/ Closing Fees/High Broker Compensation. The broker was paid $14,967.50 in fees. This loan required the borrower to pay interest rates, fees and/or charges not justified by marketplace economics in place at the time the lien was originated.

See Predatory Analysis for more comments.

- **SUMMARY OF LOAN TERMS**

The **essential loan terms** were found to be as follows:

| | |
|---|---|
| Type of Loan: | Refinance/ Cash out |
| Loan Origination Date: | 2/6/2006 |
| Amount of Loans: | $825,000 |
| Originating Lender: | ABN AMRO Mortgage Group, Inc. |
| Loan Broker: | Maui Capital Group, Inc. dba Hawaii Mortgage Solutions |
| Current Servicer: | |
| Current Note Holder: | Likely Securitized |
| 1st Note (ARM) Terms: | |
| Initial Fixed Rate: | 6.375% |
| Term of Initial Rate: | 60 mos. |
| Initial Payment: | $4382.81 |
| Payment Feature: | 5 year Interest only, ARM |
| Index Measure: | 1 year LIBOR |
| Index Rate: | 5.766 % (June 2006) |
| Margin: | 2.25% |
| Fully Indexed Rate: | 8.016% |
| Min/Max Rate: | 2.25%/11.375% |
| TILA disclosed APR: | No TIL |
| Total Closing Costs: | $22,047.53 |
| Total "Points and Fees" %: | 2.672% |
| Prepayment Penalty: | No |
| Unsecured Debt Paid off by Refinance: | POSSIBLE |
| Loan Origination Fees: | $12,375.00 |
| Loan Discount Fees: | 0 |
| Total Broker Fees: | $14,967.50 (1.814%) |
| 2nd Note (Fixed) Terms: | |
| | |
| Term of Loan: | |
| Payment Feature: | |
| TILA disclosed APR: | |
| Total Closing Costs: | |

# FINANCIAL & UNDERWRITING ANALYSIS

## Underwriting Standards

The purpose of an underwriter is to determine whether the borrowers can qualify for a loan and if the borrowers have the ability to repay the loan. This determination of the ability to repay a loan is based upon employment and income in large measure, which is proved by getting pay stubs, 1040's, W-2's and a Verification of Employment and Income on the borrowers.

If an underwriter has evaluated the loan properly, then there should be no question of the ability of the borrower to repay the loan. Debt ratios will have been evaluated, credit reviewed and a proper determination of risk made in relation to the loan amount. Approvals and denials would be made based upon a realistic likelihood of repayment.

## Automated Underwriting Systems

The underwriter's role in approving loans has been delegated to a support role in the past decade. Automated Underwriting Systems became the normal approval method. An underwriter or even a loan officer would simply input the data and the Automated System would give an approval or denial. Any documents requested would be gathered and then loan documents drawn and signed.

The real issue with the automated systems is that they were not designed to be the "final word" in approval. The system approval was designed to be a guide, a preliminary approval and nothing more. After approval was received, the underwriter would then be expected to extensively review the file, closely examining the documents for final approval.

**DISCUSSION**: Borrower's financial status at the time of the loan is taken from the loan application. An analysis of borrower's financial status at the time of the loan reveals the following: **There was no loan application provided for the loan audit. Underwriting guidelines cannot be reviewed.**

| Gross Monthly Income | | Mortgage Payment | Other Monthly Debt | Total Monthly Debt | Debt-to-income ratio |
|---|---|---|---|---|---|
| TBD | | TBD | TBD | TBD | TBD |

**CONCLUSION: Normal underwriting practices include analysis for a 28/36% debt-to-income ratio. During 2003 to 2006, subprime lending involved higher DTI ratios, from 33/38% to 38/50%. I was unable to review the loan application, credit report, income/employment documentation to determine the debt/income ratios. The purpose of an underwriter is to determine whether the borrowers can qualify for a loan and if the borrowers have the ability to repay the loan. This determination of the ability to repay a loan is based upon employment and income in large measure, which is proved by getting pay stubs, 1040's, W-2's and a Verification of Employment and Income on the borrowers. If an underwriter has evaluated the loan properly, then there should be no question of the**

**ability of the borrower to repay the loan. Debt ratios will have been evaluated, credit reviewed and a proper determination of risk made in relation to the loan amount. Approvals and denials would be made based upon a realistic likelihood of repayment.**

**Risk factors for the loan:**

1. **Equity Stripping**
2. **Interest Only**
3. **Adjustable Rate**
4. **Excess Fees/Charges**
5. **Yield Spread Premium**

## TRUTH IN LENDING ACT ANALYSIS

**APPLICATION**: The TILA applies because the transaction involves the extension of credit to a consumer for personal, family or household purposes that is subject to a finance charge and/or payable by written agreement in more than four installments. 15 U.S.C. §§ 1601-1666j.

| Pass | Fail | | | |
|---|---|---|---|---|
| | X | Notice of Right to Cancel (2 copies per borrower; filled out completely). 12 C.F.R. § 226.23(b). No Evidence in File | | |
| | X | TIL Disclosure Statement provided. 12 C.F.R. §§ 226.17, 226.18. No Evidence in File | | |
| | X | Payment Schedule correctly identified on TIL. 12 C.F.R. §§ 226.18(g), (h). No Evidence in File | | |
| TBD | | Interest rate consistent and properly disclosed: Loan app-GFE-Commitment-TIL; variable rate. 12 CFR § 226.17-18. Missing GFE, Loan App, Commitment, TIL | | |
| | X | Delivered good faith estimates of disclosures (preliminary TILDS) within 3 days of loan application. 12 C.F.R. §§ 226.19(a). No Evidence in File | | |
| | X | "Consumer Handbook on Adjustable Rate Mortgages" (CHARM) provided within 3 days of application. [Or equivalent disclosure - see 12 CFR § 226.19(b)]. No Evidence in File | | |
| | X | Interest-only payment feature adequately disclosed. 15 U.S.C. §§ 1638, 12 C.F.R. § 226.17-18. No Evidence in File | | |
| N/A | | Negative-amortization payment feature adequately disclosed. 15 U.S.C. §§ 1638, 12 C.F.R. § 226.17-18. | | |
| | X | Itemization of amount financed. 12 C.F.R. § 226.18(c).[RESPA-GFE may be substituted] No Evidence in File | | |
| | X | Property/Hazard Insurance disclosure provided (choice by consumer). 12 C.F.R. § 226.4(d)(2). No Evidence in File | | |
| N/A | | Prepayment Penalty disclosed. 12 C.F.R. § 226.18(k). | | |
| TBD | | **APR Calculation**<br>**No TIL provided**<br>See Note 1 below for further discussion. | 1ST Lien Result<br>Disclosed:<br>vs.<br>Actual:<br>Difference = .< > | 2ND Lien Result<br>Disclosed:<br>vs.<br>Actual:<br>Difference = .<. > |
| TBD | | **Finance Charge Calculation**<br>No TIL provided<br>See Note 2 below for further discussion. | 1ST Lien Result<br>Disclosed:<br>vs.<br>Actual: $<br>Difference = <$> | 2ND Lien Result<br>Disclosed:<br>vs.<br>Actual:<br>Difference = <$> |
| | X | All disclosures accurately reflect the legal obligation between the parties; 15 U.S.C. §§ 1638, 12 C.F.R. § 226.17(c). | | |

***Total Potential TILA Violations: 9***

**FURTHER RECOMMENDATIONS:** None at this time.

**POTENTIAL REMEDIES FOR VIOLATIONS:** Where a material disclosure was not given or inaccurate (APR, finance charge, amount financed, payment schedule, or total of payments), or consumer

was not provided with proper notice of right to cancel, the right of rescission is extended to 3 years. Statutory (up to $2000) and actual damages, as well as attorney's fees, may also be available for the violations noted.

## TILA NOTATIONS

Under the Truth in Lending Act ("TILA"), rescission rights arise when: (1) the transaction is a consumer credit transaction; (2) in which a non-purchase lien or security interest is or will be placed; and (3) on the consumer's principal dwelling. In a rescindable transaction, each consumer must be given a copy of the TILA disclosure statement with all "material" information correctly disclosed and notice of a three-day right to rescind. If these material disclosures are not properly provided, the three-day right to rescind is extended until one of the following events occurs: (1) all materials disclosures are correctly given and a new three day notice of cancellation, (2) the expiration of three years after consummation of the transaction; (3) the transfer of all of the consumer's interest in the property; or (4) the sale of the property. All persons entitled to rescind under TILA must receive two copies of the rescission notice rights and one copy of the material disclosures at or before closing. The notice of rescission must provide the following information: (1) the retention or the acquisition of a security interest in the consumer's principal dwelling; (2) the consumer's right to rescind; (3) how to exercise the right to rescind with a form for that purpose, designating the address of the creditor's place of business; (4) the effects of rescission; and (5) the date the rescission period expires.

1. **Annual Percentage Rate Tolerances and Right of Rescission**

An APR deviation is a material violation permitting the right of rescission **if**: (a) it was a refinance, (b) within 3 years of the transaction, and (c) outside the tolerances set forth below.

12 CFR § 226.22(a)(2) provides: "As a general rule, the annual percentage rate shall be considered accurate **if** it is not more than 1/8 of 1 (.125%) percentage point above or below the annual percentage rate determined in accordance with paragraph (a)(1) of this section." Under 12 CFR 226.22(a)(3): "In an irregular transaction, the annual percentage rate shall be considered accurate if it is not more than 1/4 of 1 (.25%) percentage point above or below the annual percentage rate determined in accordance with paragraph (a)( 1) of this section."

2. **Finance Charge Tolerances and Right of Rescission**

12 CFR § 226.18(d) requires the disclosure of the finance charge amount. For purposes of "mortgage loans," 12 CFR § 226.18(d)(1) provides: "In a transaction secured by real property or a dwelling, the disclosed finance charge and other disclosures affected by the disclosed finance charge (including the amount financed and the annual percentage rate) shall be treated as accurate if the amount disclosed as the finance charge: (i) is understated by no more than $100; or (ii) is greater than the amount required to be disclosed." Statutory and actual damages are available for this violation.

A finance charge deviation is a material violation permitting the right of rescission **if**: (a) it was a refinance, (b) within 3 years of the transaction, and (c) outside the tolerances set forth below.

12 CFR § 226.23(g) provides: "Tolerances for accuracy.--(1) One-half of 1 percent tolerance. Except as provided in paragraphs (g)(2) and (h)(2) of this section, the finance charge and other disclosures affected by the finance charge (such as the amount financed and the annual percentage rate) shall be considered accurate for purposes of this section if the disclosed finance charge: (i) is understated by no more than ½ of 1 percent of the face amount of the note or $100, whichever is greater; or (ii) is greater than the amount required to be disclosed. (2) One percent tolerance. In a refinancing of a residential mortgage transaction with a new creditor (other than a transaction covered by § 226.32), if there is no new advance and no consolidation of existing loans, the finance charge and other disclosures affected by the finance charge (such as the amount financed and the annual percentage rate) shall be considered accurate for purposes of this section if the disclosed finance charge: (i) is understated by no more than 1 percent of the face amount of the note or $100, whichever is greater; or (ii) is greater than the amount required to be disclosed."

15 U.S.C. §1635(i) also provides: "Rescission Rights In Foreclosure.--(2) Tolerance For Disclosures.--Notwithstanding section 106(f), and subject to the time period provided in subsection (f), for the purposes of exercising any rescission rights after the initiation of any judicial or non judicial foreclosure process on the principal dwelling of the obligor securing an extension of credit, the disclosure of the finance charge and other disclosures affected by any finance charge shall be treated as being accurate for purposes of this section if the amount disclosed as the finance charge does not vary from the actual finance charge by more than $35 or is greater than the amount required to be disclosed under this title."

## HOEPA

**APPLICATION**: Neither statute like applies as the estimated APR [~xx] would not exceed 8% over the comparable yield on Treasury securities [~10], nor do the "total points and fees" exceed 8% or 6%, respectively, of the loan amount.

| Pass | Fail | |
|---|---|---|
| | | APR disclosed. 12 CFR 226.32(c)(2) |
| | | 3 days prior to closing, the APR and disclosure statement similar to the following: "You are not required to complete…" (HOEPA). |
| | | 3 days prior to closing, disclosure: "*CONSUMER CAUTION AND HOME OWNERSHIP COUNSELING NOTICE…*". |
| | | disclosed the amount of the borrower's regular monthly payment. 12 CFR 226.32(c)(3). |
| | | If variable, includes a statement that the interest rate and monthly payment may increase and the maximum payment that could be reached. 12 CFR 226.32(c)(4). |
| | | No balloon payments prior to ten years. 12 CFR 226.32(d)(1)(i)-(iii). |
| | | Disclosed amount of any balloon payment. 12 CFR 226.32(c)(3). |
| | | No prepayment penalty after first 5 years, source of funds is not refinance by creditor, and consumers total monthly is no more than 50% of DTI. 12 CFR 226.32(d)(7). |
| | | No increase in the interest rate in the event of default. 12 CFR 226.32(d)(4). |
| | | No negative amortization. 12 CFR 226.32(d)(2). |
| | | No refinance within one year. 12 CFR 226.34. |
| | | No prepaid payments. 12 CFR 226.32(d)(3). |
| | | Engaging in a pattern or practice of extending such credit to a borrower based on the borrower's collateral rather than considering the borrower's current and expected income, current obligations, and employment status to determine whether the borrower is able to make the scheduled payments to repay the obligation, is in violation of Section 129(h) of TILA, 15 U.S.C. § 1639(h), and see also, Regulation Z, 12 C.F.R. § 226.32. |
| | | If refinance transaction, disclosed total amount borrowed and if the loan amount includes premiums or other charges for optional credit insurance or debt cancellation coverage, that fact shall be stated. 12 CFR 226.32 (c)(5). |

***Total Potential HOEPA Violations: 0***

**POTENTIAL REMEDIES FOR VIOLATIONS**: All TILA remedies, plus all finance charges and fees if "material" violation, pursuant to 15 U.S.C. §1640(a)(4).

## REAL ESTATE SETTLEMENT PROCEDURES ACT ANALYSIS

**APPLICATION**: The RESPA applies because lender regularly extends federally related mortgage loans aggregating more than $1 million per year, and intended for the purchase of a one- to four-family residential property. 12 U.S.C. §§ 2601-2617.

| Pass | Fail | |
|---|---|---|
| | X | Informed borrower of intention to transfer the servicing of the loan and/or failed to inform the borrower of the actual transfer within fifteen (15) days before the effective date of the transfer. 24 C.F.R. § 3500.21. No Evidence in File |
| X | | Did not require deposit of funds in escrow in excess of the statutorily permitted amounts. 24 C.F.R. § 3500.17. |
| N/A | | Purchase Money: Provided the Special Information Booklet explaining the settlement costs within three (3) business days after consumer submitted loan application. 24 C.F.R. § 3500.6. |
| X | | No fees charged for preparation of the settlement statement, escrow account statement, and/or the TILA disclosure statement. 24 C.F.R. § 3500.12. |
| | X | Disclosed all affiliated business arrangements. 24 C.F.R. § 3500.15. No Evidence in File |
| | X | Did not give, provide or receive a hidden fee or thing of value for the referral of settlement business, including but not limited to, kickbacks, hidden referral fees, and/or yield spread premiums. 24 C.F.R. § 3500.14. |
| TBD | | Properly and timely paid for property taxes, insurance and other charges for which Defendants are collecting within an escrow impound account; or other servicing violations. 24 C.F.R. § 3500.17. |
| | X | HUD-1 provided at closing (or 1 day before if requested) and accurate. 24 C.F.R. § 3500.8(b). |
| | X | No fees charged in excess of the reasonable value of goods provided and/or services rendered. |
| N/A | | Purchase Money: Seller did not impose use of particular service provider. 24 C.F.R. § 3500.16. |

***Total Potential RESPA Violations:5***

**FURTHER RECOMMENDATIONS:** QWR/discovery re mortgage servicing for potential servicing violations or breach of contract.

**POTENTIAL REMEDIES FOR VIOLATIONS:** Actual damages, statutory (up to $1000 if show pattern and practice), and treble damages for excessive portion of fees (below), plus attorney's fees and costs for violations noted.

The following are **suspect or excessive closing costs/fees** that may be actionable for treble damages pursuant to 12 U.S.C. §2607: **YSP Fee $2,062.50, Loan Origination $12,375.00, Lender Administration Fee $550.00.**

## PREDATORY LOAN INDICATORS

"Predatory lending" is a general term used to describe unfair, deceptive, or fraudulent practices of lenders during the loan origination process. Predatory lending is often a combination of several factors that can only be evaluated in the context of the overall lending transaction. Typically, no single factor can be relied upon to consider it a predatory loan.

A large number of agencies and consumer organizations recognize predatory lending, including, for example, the Department of Housing and Urban Development, Federal Deposit Insurance Corporation, National Consumer Law Center, Hawaii Department of Real Estate, Fannie Mae, National Association of Consumer Advocates, Association of Community Organizations for Reform Now, National Home Equity Mortgage Association, and Center for Responsible Lending.

The predatory lending factors present in the subject transaction were found to be as follows:

| Pass | Fail | |
|---|---|---|
| TBD | | Solicitation for refinance. |
| | X | Mortgage broker and corresponding lender involved. |
| | X | Borrower was a minority and/or the transaction was conducted in a foreign language. |
| TBD | | Loan-to-value ratio above 80%. |
| TBD | | Debt-to-income ratio above 28/36%. |
| X | | Teaser rate involved. |
| X | | Interest rate on 1st was more than 2 points above: 6.08% (2.77 margin) [average US 5/1 ARM rate] or 6.4% [average 30-year fixed]. (*source*: Freddie Mac 1/2003-12/2006) |
| | X | Excessive Closing Costs/Fees. |
| X | | Prepayment Penalty. |
| | X | Interest-Only Payments. |
| X | | Negative Amortization Payments. |
| NA | | Broker Compensation >2% (including yield spread premium). |
| TBD | | Loan Flipping – refinance within 3 years of previous loan. |
| X | | Balloon Payments. |
| | X | Unsecured Debt Shifted to Secured (i.e., credit cards). |
| X | | Unnecessary insurance and other products offered in closing. |
| X | | Mandatory arbitration clause in Note. |
| TBD | | Bait & Switch – e.g., borrower initially offered lower rate than final Note. |
| | X | Other unfair, deceptive, or fraudulent practices in transaction. |

***Total Predatory Indicators: 6***