## Predatory Lending

The terms "abusive lending" or "predatory lending" are most frequently defined by reference to a variety of lending practices. Although it is generally necessary to consider the totality of the circumstances to assess whether a loan is predatory, a fundamental characteristic of predatory lending is the aggressive marketing of credit to prospective borrowers who simply cannot afford the credit on the terms being offered.

Typically, such credit is underwritten predominantly on the basis of the liquidation value of the collateral, without regard to the borrower's ability to service and repay the loan according to its terms. When a loan has been made based on the foreclosure value of the collateral, rather than on a determination that the borrower has the capacity to make the scheduled payments under the terms of the loan, the borrower's current and expected income, current obligations, employment status, and other relevant financial resources, the lender is effectively counting on its ability to seize the borrower's equity in the collateral to satisfy the obligation and to recover the typically high fees associated with such credit. Not surprisingly, such credits experience foreclosure rates higher than the norm.

"Predatory Lending" can be defined as any lien secured by real estate which shares well known common characteristics. While such disregard of basic principles of loan underwriting lies at the heart of predatory lending, a variety of other practices may also accompany the marketing of such credit, such as:

***Loan Flipping & Equity Stripping***
**Repeated refinancing of borrowers into loans that have no tangible benefit to the borrower. Can be the same lender or different ones. Loans and refinances whereby equity is removed from the home through repeated refinances, consolidation of short term debt into long term debt, negative amortization or interest only loans whereby payments are not reducing principle, high fees and interest rates. Eventually, borrower cannot refinance due to lack of equity.**

***Shifting Unsecured Debt Into Mortgage***
**Mortgage lenders badger homeowners with advertisements and solicitations that tout the "benefits" of consolidating bills into a mortgage loan. The lender fails to inform the borrower that consolidating unsecured debt such as credit cards and medical bills into a mortgage loan secured by the home is a bad idea. If a person defaults on an unsecured debt, they do not lose their home. If a homeowner rolls their unsecured debt into their mortgage loan and default on their mortgage payments, they can lose their home. Furthermore, since unsecured debt generally is paid off between three and five years, shifting unsecured debt into a mortgage loan extends the payoff period to 15 to 30 years. Paying off unsecured debt with a mortgage loan also necessarily increases closing costs**

**because they are often calculated on a percentage basis, thereby increasing the loan balance. Whereas the old total monthly household debt payments may in some cases be less than the monthly payments on the new mortgage loan, the monthly mortgage payments are often more than the previous mortgage payments, thus exacerbating the risk that the homeowner will lose the home to foreclosure.**

***Inappropriate Loan Programs***
**Is materially more expensive in terms of fees, charges and/or interest rates than alternative financing for which the borrower qualifies. Can include prime borrowers who are placed into subprime loans, negative or interest only loans. Loan terms whereby the borrower can never realistically repay the loan.**

***Yield Spread Premium***
**Does not plainly and prominently disclose on the good faith estimate of closing costs the size of any yield spread premium paid directly or indirectly, in whole or in part, to a mortgage loan officer.**

***Excessive Fees and Rates***
**Requires borrowers to pay interest rates, fees and/or charges not justified by marketplace economics in place at the time the lien was originated.**

***Non-English Speaking borrowers***
**Persons who don't speak or read English well and all the conversations are held in either English or their native language. Borrowers cannot understand the loan documents and have no idea what they are signing.**

***Deception, Fraud, Unconscionable***
**Is marketed in a way that fails to fully disclose all material terms. Includes any terms or provisions which are unfair, fraudulent or unconscionable. Is marketed in whole or in part on the basis of fraud, exaggeration, misrepresentation or the concealment of a material fact. Includes interest only loans, adjustable rate loans, negative amortization and HOEPA loans.**

## POTENTIAL ADDITIONAL CLAIMS ANALYSIS

(Probability of Violations Ratings: No Evidence or Possible)
**Note: Federal laws may preempt certain state claims.**

**Equal Credit Opportunity Act (discrimination) –** ***No Evidence***

The Equal Credit Opportunity Act provides at Sec. 202.1 – Authority, scope and purpose:

> (b) Purpose. The purpose of this regulation is to promote the availability of credit to all creditworthy applicants without regard to race, color, religion, national origin, sex,

> marital status, or age (provided the applicant has the capacity to contract); to the fact that all or part of the applicant's income derives from a public assistance program; or to the fact that the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The regulation prohibits creditor practices that discriminate on the basis of any of these factors. The regulation also requires creditors to notify applicants of action taken on their applications; to report credit history in the names of both spouses on an account; to retain records of credit applications; to collect information about the applicant's race and other personal characteristics in applications for certain dwelling-related loans; and to provide applicants with copies of appraisal reports used in connection with credit transactions.

Additionally, at Sec. 202.4 – General Rule Prohibiting Discrimination:

> 1. Scope of section. The general rule stated in Sec. 202.4 covers all dealings, without exception, between an applicant and a creditor, whether or not addressed by other provisions of the regulation. Other sections of the regulation identify specific practices that the Board has decided are impermissible because they could result in credit discrimination on a basis prohibited by the act. The general rule covers, for example, application procedures, criteria used to evaluate creditworthiness, administration of accounts, and treatment of delinquent or slow accounts. Thus, whether or not specifically prohibited elsewhere in the regulation, a credit practice that treats applicants differently on a prohibited basis violates the law because it violates the general rule. Disparate treatment on a prohibited basis is illegal whether or not it results from a conscious intent to discriminate. Disparate treatment would be found, for example, where a creditor requires a minority applicant to provide greater documentation to obtain a loan than a similarly situated nonminority applicant. Disparate treatment also would be found where a creditor waives or relaxes credit standards for a nonminority applicant but not for a similarly situated minority applicant. Treating applicants differently on a prohibited basis is unlawful if the creditor lacks a legitimate nondiscriminatory reason for its action, or if the asserted reason is found to be a pretext for discrimination.

**DISCUSSION: No direct evidence of discrimination, however the loan program offered may not have been offered to other borrower's with more in-depth understanding of the terms of the program.**

**Fraud –** ***Possible***

**Fraud in the factum**
**Fraud in the Factum is a type of fraud where misrepresentation causes one to enter a transaction without accurately realizing the risks, duties, or obligations incurred. Black's Law Dictionary (2nd Pocket ed. 2001 pg. 293). This can be when the maker or drawer of a negotiable instrument, such as a promissory note or check, is induced to sign the instrument without a reasonable opportunity to learn of its fraudulent character or essential terms. Determination of whether an act constitutes fraud in the factum depends upon consideration of "all relevant factors." Fraud in the factum usually voids the instrument under state law and is a real defense against even a holder in due course.**

**Other State/Common Law Claims- See Below** ***Possible***

**OTHER CLAIMS & RECOMMENDED LEGAL RESEARCH**

**Note: Federal laws may preempt certain state claims**

**[§454F-17] Prohibited practices.** It shall be a violation of this chapter for a mortgage loan originator to:

(1) Directly or indirectly employ any scheme, device, or artifice to defraud or mislead borrowers or lenders or to defraud any person;

(2) Engage in any unfair or deceptive practice toward any person;

(3) Obtain property by fraud or misrepresentation;

(4) Solicit or enter into any contract with a borrower that provides in substance that the person or individual subject to this chapter may earn a fee or commission through "best efforts" to obtain a loan even though no loan is actually obtained for the borrower;

(5) Solicit, advertise, or enter into a contract for specific interest rates, points, or other financing terms unless the terms are actually available at the time of soliciting, advertising, or contracting;

(6) Conduct any business covered by this chapter without holding a valid license as required under this chapter, or assist or aid and abet any person in the conduct of business under this chapter without a valid license as required under this chapter;

(7) Fail to make disclosures as required by this chapter and any other applicable state or federal law including rules or regulations thereunder;

(8) Fail to comply with this chapter or rules adopted under this chapter, or fail to comply with any other state or federal law, including the rules and regulations adopted thereunder, applicable to any business authorized or conducted pursuant to this chapter;

(9) Make, in any manner, any false or deceptive statement or representation, including with regard to the rates, points, or other financing terms or conditions for a residential mortgage loan, or engage in bait and switch advertising;

(10) Negligently make any false statement or knowingly and wilfully make any omission of material fact in connection with any information or reports filed with a governmental agency or the Nationwide Mortgage Licensing System or in connection with any investigation conducted by the commissioner or another government agency;

(11) Make any payment, threat, or promise, directly or indirectly, to any person for the purposes of influencing the independent judgment of the person in connection with a residential mortgage loan, or make any payment, threat, or promise, directly or indirectly, to any appraiser of a property for the purpose of influencing the independent judgment of the appraiser with respect to the value of a property;

(12) Collect, charge, attempt to collect or charge, or use or propose any agreement purporting to collect or charge any fee prohibited by this chapter;

(13) Cause or require a borrower to obtain property insurance coverage in an amount that exceeds the replacement cost of the improvements as established by the property insurer;

(14) Fail to truthfully account for moneys belonging to a party to a residential mortgage loan transaction; or

(15) Deliver a misleading or deceptive communication or advertisement, whether written, electronic, or oral, when marketing or soliciting a residential mortgage loan. A communication or advertisement that uses the name or trademark of a financial institution as defined in section 412:1-109 or its affiliates or subsidiaries, or infers that the communication or advertisement is from, endorsed by, is related to, or is the responsibility of the financial institution is a misleading or deceptive communication. Advertising that a specific interest rate, points, or financial terms are available when the rates, points, or financial terms are not actually available is a misleading or deceptive communication. [L Sp 2009, c 32, pt of §2]

**[§454M-6] Prohibited activities.** It shall be unlawful for any mortgage servicer in the course of any mortgage loan transaction:

(1) To misrepresent or conceal material facts, to make false promises, or to pursue a course of misrepresentation through its agents or otherwise;

(2) To engage in any transaction, practice, or course of business that is not in good faith, does not constitute fair dealing, or that constitutes a fraud upon any person, in connection with the servicing, purchase, or sale of any mortgage loan;

(3) To fail to comply with the mortgage loan servicing transfer, escrow account administration, or borrower inquiry response requirements imposed by Sections 6 and 10 of the Real Estate Settlement Procedures Act, 12 United States Code Sections 2605 and 2609, and regulations adopted thereunder by the Secretary of Housing and Urban Development; or

(4) To fail to comply with applicable federal laws and regulations related to mortgage servicing. [L 2009, c 106, pt of §1]

**§480-2 Unfair competition, practices, declared unlawful.** (a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

(b) In construing this section, the courts and the office of consumer protection shall give due consideration to the rules, regulations, and decisions of the Federal Trade Commission and the federal courts interpreting section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended.

(c) No showing that the proceeding or suit would be in the public interest (as these terms are interpreted under section 5(b) of the Federal Trade Commission Act) is necessary in any action brought under this section.

(d) No person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section.

(e) Any person may bring an action based on unfair methods of competition declared unlawful by this section. [L 1965, c 129, pt of §1; Supp, §205A-1.1; HRS §480-2; am L 1987, c 274, §2; am L 1988, c 51, §1; am L 2002, c 229, §2]

Law Journals and Reviews

Misrepresentation and Deception Under Section 480-2 of the Hawaii Revised Statutes. 10 HBJ 69.

Updating Unfair or Deceptive Acts and Practices Under Chapter 480-2. 10 HBJ No. 13, at pg. 109.

Case Notes

Requires showing that suit in public interest; may be proven by knowledge of illegality. 732 F.2d 1403.

Employer's negligent misrepresentation that it guaranteed employees full payment of their pensions was not "unfair act". 804 F.2d 1418.

Neither contractor association's collective bargaining representation nor its fee for representation were unfair or deceptive acts. 809 F.2d 626.

Section does not apply to claims arising from securities transactions. 849 F.2d 388; 758 F. Supp. 1357.

Violated where pawn shop created "likelihood of confusion" by soliciting borrowers while disguising loans as sales. 3 F.3d 1261.

Court erred in finding this section preempted, where court dismissed claim that issuer of title insurance policy violated this section. 95 F.3d 791.

Attachment available only where contract at issue also establishes a debtor-creditor relationship for payment of money. 485 F. Supp. 1015.

Inability to establish antitrust claim does not prevent establishment under this section; plaintiffs may recover for violations which occurred prior to four year statute of limitations if they can

prove fraudulent concealment; practice is unfair when it offends public policy and when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers; §480-13 creates private right of action. 491 F. Supp. 1199.

Plaintiffs could show that violation of federal or state securities laws satisfies public interest requirement to bring suit under this section. 501 F. Supp. 830.

Continuance of unlawful pricing program in contravention of court order is as a matter of law, an unfair method of competition. 513 F. Supp. 726.

Action by shopping center tenant against shopping center owner. 530 F. Supp. 499.

Preempted by federal labor regulations. 687 F. Supp. 1453.

Suit for causes of action which arose prior to amendment is not precluded. 691 F. Supp. 247.

Minority shareholder of a corporation is not a consumer; no private cause of action for unfair methods of competition. 700 F. Supp. 1056.

Although distributor corporation had standing to bring unfair competition claim, shareholders were not "consumers" with standing to sue under deceptive practices clause. 775 F. Supp. 1329.

Section inapplicable to insurance business. 795 F. Supp. 1036.

As a business, plaintiff had standing to sue for unfair competition under this section. 808 F. Supp. 736.

Plaintiff corporation lacked standing to sue for deceptive practices under chapter 480; plaintiffs, shareholders and officers of corporation, lacked standing to sue for deceptive practices, where harm suffered by plaintiffs arose indirectly as a result of harm done to corporation. 895 F. Supp. 1365.

Plaintiff had standing to bring its §480-2 claim for unfair methods of competition; plaintiff's likelihood of confusion allegations may support both §§480-2 unfair methods of competition and 481A [sic] deceptive acts or practices claims. 945 F. Supp. 1344.

Hawaii supreme court would find that plaintiff, a third-party beneficiary of insurance contract between defendant insurer and a consumer, had standing to bring a deceptive acts or practices claim pursuant to this section. 947 F. Supp. 429.

Because defendant wholesale food marketer and distributor did not meet definition of a consumer, it lacked standing to sue for deceptive practices under this section. 61 F. Supp. 2d 1092.

Plaintiffs' unfair or deceptive acts or practices claims dismissed; this section and §480-13 do not provide a cause of action for personal injury claims. 100 F. Supp. 2d 1265.

A technical violation of Truth In Lending Act (TILA) does not constitute a per se violation of this section. The technical violation of TILA at issue, i.e., the failure to provide a properly dated notice of right to cancel, did not qualify as an unfair act or practice. 101 F. Supp. 2d 1326.

A municipality may be held liable under this chapter if its act is done "in the conduct of any trade or commerce", but is not subject to a treble damage penalty. 215 F. Supp. 2d 1098.

Where the dispute giving rise to a claim for unfair and deceptive act in trade or commerce occurred after the alleged injury, when plaintiff alleged that defendant failed to comply with their agreement regarding the release of plaintiff's medical records, plaintiff lacked standing as a consumer to bring a claim under this section, and defendant was not engaged in trade or commerce. 383 F. Supp. 2d 1244.

Plaintiff's claim under this section failed, where the statute of limitations barred any unlawful business practice claim that occurred prior to the four-year limitation period and although the additional alleged occurrences would not be time-barred, plaintiff's asserted damages flowing from the violation were unrecoverable because they were speculative. 522 F. Supp. 2d 1272.

Complexity of insurance policy, without more, does not make document deceptive. 55 H. 155, 516 P.2d 720.

Federal statutes and decisions are to be used as guides. 63 H. 289, 627 P.2d 260.

Violation where financial institution failed to inform parents with education plan, that it had a side deal with schools to pay tuition in semiannual installments. 71 H. 285, 788 P.2d 833.

A broker or salesperson actively involved in a real estate transaction engages in "conduct in any trade or commerce" and is thus subject to liability under this chapter. 80 H. 54, 905 P.2d 29.

Where employee was not a "consumer" as defined under §480-1, employee lacked standing to maintain private cause of action under §480-13 against workers' compensation insurer based on alleged violation of this section. 83 H. 457, 927 P.2d 858.

Where employer was not a "consumer" as defined under §480-1, employee could not maintain action under §480-13, based on employee's third party beneficiary status, against workers' compensation insurer for alleged violation of this section. 83 H. 457, 927 P.2d 858.

There is no private claim for relief under §480-13 for unfair methods of competition in violation of this section; private remedy is restricted to claims of unfair or deceptive acts or practices. 91 H. 224, 982 P.2d 853.

Genuine issues of material fact precluded summary judgment with respect to defendant's counterclaims based on alleged violation of this section where defendants alleged that plaintiff credit union "unethically" or "unscrupulously" attempted to influence defendants to sign loan documents by making deceptive representations to alleviate defendants' concerns that the mortgage interest rate was not that for which they had bargained for. 94 H. 213, 11 P.3d 1.

By the plain language of this chapter, no actual purchase is necessary as a prerequisite to a consumer recovering damages under §480-13, based on injuries stemming from violations of this section. 98 H. 309, 47 P.3d 1222.

Under the filed-rate doctrine, telephone customers' claims failed as a matter of law where customers could not demonstrate that telephone company's allegedly inadequate disclosures constituted an unfair or deceptive trade practice because (1) company's tariffs on file with the public utilities commission disclosed that fees should be assessed against customers receiving touch calling services; (2) knowledge of these disclosures contained in the tariff was imputed to the customers, and, thus, (3) customers could prove neither the injury nor the likelihood of damage that is required under this section or chapter 481A. 109 H. 69, 123 P.3d 194.

Any person may bring a claim of unfair methods of competition based upon conduct that could also support a claim of unfair or deceptive acts or practices as long as the nature of the competition is sufficiently alleged in the complaint. 113 H. 77, 148 P.3d 1179.

By its plain language, subsection (e) authorizes any person, i.e., businesses and individual consumers, to bring an action grounded upon unfair methods of competition; thus, trial court erred to the extent that it premised its dismissal of plaintiffs' unfair methods of competition claims on its conclusion that plaintiffs "are not competitors of defendant". 113 H. 77, 148 P.3d 1179.

Retroactive application of subsection (e), which created a private claim for relief, is not permitted inasmuch as the legislature did not expressly or obviously indicate its intention that subsection (e) apply retroactively; thus, trial court correctly concluded that plaintiffs' claims of unfair methods of competition based upon defendant's alleged wrongful acts prior to the effective date of subsection (e) were barred. 113 H. 77, 148 P.3d 1179.

Under this section, plaintiffs need not be "in competition" with defendant; thus, trial court erred to the extent that its dismissal of plaintiffs' unfair methods of competition claims were premised on its conclusion that plaintiffs "are not in competition with defendant". 113 H. 77, 148 P.3d 1179.

Where unincorporated association of apartment owners was not a "consumer" as defined by §480-1, it lacked standing to bring an action based upon unfair or deceptive acts or practices declared unlawful by this section. 115 H. 232, 167 P.3d 225.

Where unincorporated association of apartment owners was not a "consumer" as defined by §480-1, it lacked standing to bring an action based upon unfair or deceptive acts or practices declared unlawful by this section. 115 H. 232, 167 P.3d 225.

Whether it was an unfair practice for creditor to threaten to cut off business with debtor's employer unless debt was paid was a jury question. 2 H. App. 301, 632 P.2d 1071.

Corporation committed unfair or deceptive acts by allowing another to use its contractor's license and guaranteeing its own contractual obligations; section does not supersede remedy for common law fraud. 6 H. App. 125, 712 P.2d 1148.

Unfair or deceptive trade practice claimed where defendants' labels implied that foreign-made kukui nut leis were manufactured in Hawaii. 7 H. App. 600, 789 P.2d 501.

Evidence supported conclusion that person and corporation owned and operated by person engaged in unfair and deceptive acts or practices in publication of corporation's newspaper and television advertisements. 9 H. App. 106, 826 P.2d 879.

In action by consumer under this section, "unclean hands" of consumer not a defense to claim for damages under §480-13(b)(1). 86 H. 405 (App.), 949 P.2d 1026.

Breach of Contract

Need to evaluate entire mortgage-servicing history for breach of contract –

QWR RECOMMENDATION.

[Statute of Limitations of 4 years, CCP §337 – may be subject to equitable tolling.]

Breach of Implied Covenant of Good Faith and Fair Dealing

The law provides that in every contract, there is an implied duty of good faith and fair dealing between the parties. *Carma Developers, Inc. v. Marathon Dev. Cal., Inc.* (1992) 2 Cal.4th 342, 371. This implied covenant imposes the requirement "that neither party will do anything, which will injure the right of the other to receive the benefits of the agreement." *Andrews v. Mobile Aire Estates* (2005) 125 Cal.App.4th 578, 589.

Breach of Fiduciary Duty

In certain situations, courts have implicitly recognized imposing fiduciary duties on lenders based on policy grounds. For instance, a lender may be considered a fiduciary when it "takes control" of the borrower, or when "moral, social, personal, or domestic" relationships are shown to exist between the parties. (Cases cited in American Bar Association – Business Tort Litigation (2d Ed.) Further, when the lender undertakes to perform a task on behalf of the borrower, then it is likely that the lender has made itself a fiduciary for the borrower, based on the law of agency.
Often times, when a loan officer or mortgage broker is helping to arrange a loan for a borrower, that loan officer/mortgage broker is, in reality, acting as the agent for both the lender and borrower.

The fiduciary duty of the lender is a responsibility to perform their own diligence to determine if a customer is being placed in a loan that is legal, properly disclosed, is the best loan for the consumer given their financial circumstance and affordable over the life of the loan if present financial positions hold steady. If the lender knew or should have known that the Borrower has a likelihood of defaulting on this loan, he/she has a fiduciary duty to the borrower to not place them in that loan (in harm's way).

When a loan transaction occurs, any missteps in the loan transaction process can lead to dire consequences for the borrower. It is for this reason that the law should impose more liberally a fiduciary relationship between borrower and lender, especially in the residential home loan marketplace where the average borrower is not as sophisticated as the lender. If fiduciary relationships were more liberally imposed, we would likely see lenders implementing more safeguards before underwriting a loan.

If the lender is aware that the borrowers would be better off with another type of loan that the lender offers, they have violated their duty to the consumers and such act of deception would be likely be considered fraud on the consumer and predatory.

▶Brokers owe a fiduciary duty to borrowers. (*Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773).[2]

▶Liability potential for lender may exist if borrower can prove either that: (1) a "special relationship or circumstance" existed (*Peterson Development Co. v. Torrey Pines Bank*, 377 Cal.App.3d 103, 119 (1991); *Neiderreuther v. Schifter*, 1998 WL 409876, *1 (N.D.Cal. 1998)), (2) the lender "directly ordered, authorized or participated in" the broker's tortious conduct (*Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 785), or (3) that broker acted as lender's agent for the transaction (*Montoya v. McLeod* (1985) 176 Cal.App.3d 57).

Unjust Enrichment

Unjust enrichment is a general equitable principle that no person should be allowed to profit at another's expense without making restitution for the reasonable value of any property, services, or other benefits that have been unfairly received and retained. The elements to prove this claim are threefold. First, the plaintiff must have provided the defendant with something of value while expecting compensation in return. Second, the defendant must have acknowledged, accepted, and benefited from whatever the plaintiff provided. Third, the plaintiff must show that it would be inequitable or unconscionable for the defendant to enjoy the benefit of the plaintiff's actions without paying for it. (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 1013, p. 1102; *McBride v. Boughton* (2004) 123 Cal.App.4th 379, 388–389; *Ghirardo v. Antonioli* (1996) 14 Cal.4th 39, 51–52.)

Unconscionability

Pursuant to *Cal. Civ. Code § 1670.5*, the court has the power to refuse to enforce a contract or a clause in a contract that is unconscionable when made.

The common law contract defense of unconscionability could be applied to stop a foreclosure when either the mortgage terms are unreasonably favorable to the lender or certain aspects of the transaction render it unconscionable.[3]

**DISCUSSION: The broker has a fiduciary responsibility to confirm the borrower has the ability to repay the loan provided the terms of the note are fully realized.**

Case Law

---

[2] *See also, Am. Bankers' Ins. Co. v. Wells*, 819 So. 2d 1196 (Miss. 2001); *Barrett v. Bank of Am.* 229 Cal. Rptr. 16 (Ct. App. 1986); *Charleswell v. Chase Manhattan Bank, N.A.*, 308 F. Supp. 2d 545 D. V.I. 2004); *Chedick v. Nash*, 151 F. 3d 1077 (D.C. Cir. 1998); *Hilgeman v. Am. Mortg. Securities, Inc.*, 994 P. 2d 1030 (2000); *Choi v. Chase Manhattan Mortg. Co.*, 63 F. Supp. 2d 874 (N.D. Ill. 1999); *Citicorp. Mortg. Inc., v. Upton*, 42 Conn. Supp. 302 (Conn. Super. 1992); *Farm Credit Servs. Of America v. Dougan*, 2005 S.D. 94 (2005); *Foley v. Interactive Data Corp.*, 765 P.2d 373 (Cal. 1988); *In re Hart*, 246 B.R. 709 (Bankr. D. Mass. 2000); *Whittingham v. Mortg. Elec. Registration Servs*, 2007 WL 1362669 (D.N.J. May 4, 2007).

In *Saxon vs. Hillery*, CA, Dec 2008, Contra Costa County Superior Court, an action by Saxon to foreclose on a property by lawsuit was dismissed due to lack of legal standing. This was because the Note and the Deed of Trust were "owned" by separate entities. The Court ruled that when the Note and Deed of Trust were separated, the enforceability of the Note was negated until rejoined. This can be an effective defense in foreclosure actions.

If the mortgage (or the deed of trust) is not a legally enforceable instrument then there can be no valid foreclosure. *In re Hudson*, 642 S.E. 2d 485 (N.C. Ct. App. 2007). A deed or mortgage that is forged is presumptively invalid. *Ex Parte Floyd*, 796 So. 2d 303 (Ala. 2001). As a result, forgery of a mortgage is generally an absolute defense to foreclosure. Similarly, where a deed has been forged and the new title holder then encumbers the property, courts have held both the deed and the mortgages are null. *Flagstar v. Gibbons*, 367 Ark. 225 (2006).

The validity of security instruments in some community property states may require both spouses to execute instruments encumbering a homestead. For example, under Wisconsin law, a court found that a mortgage on a married couple's homestead that was not signed by both spouses was void as to both spouses, regardless of their respective ownership interests. *In re Larson*, 346 B.R. 486 (Bankr. E.D. Wis. 2006). The failure to follow the formal requisites in acknowledging deeds and mortgages may also result in a void instrument. Many deed and mortgage fraud cases involve situations in which the person whom the notary certified as having appeared did not, in fact, appear.

*In re Fisher*, 320 B.R. 52 (E.D. Pa. 2005). In fraudulent mortgage cases, borrowers are often instructed to sign a stack of documents that are then taken elsewhere for notarization. *Goldone Credit Corp. v. Hardy*, 503 So. 2d 1227 (Ala. Civ. App. 1987). Alternatively, improper notarization may result from the taking of an actual acknowledgment from an imposter, incompetent person, or over the telephone. Regardless, of the reason for the defective acknowledgment, practitioners should investigate whether such defects may render the instrument invalid.

**UCC Provisions**

UCC 3-309. ENFORCEMENT OF LOST, DESTROYED, OR STOLEN INSTRUMENT. 9. ENFORCEMENT OF LOST, DESTROYED, OR STOLEN INSTRUMENT.

(a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

(b) A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument.

§ 3-301. PERSON ENTITLED TO ENFORCE INSTRUMENT.

"Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a non-holder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3-309 or 3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

2. HOLDER IN DUE COURSE.

(a) Subject to subsection (c) and Section 3-106(d), "holder in due course" means the holder of an instrument if:

(2) the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in Section 3-306, and (vi) without notice that any party has a defense or claim in recoupment described in Section 3-305(a).

§ 3-305. DEFENSES AND CLAIMS OF RECOUPMENT.

(a) Except as otherwise provided in this section, the right to enforce the obligation of a party to pay an instrument is subject to the following:

(1) a defense of the obligor based on (i) infancy of the obligor to the extent it is a defense to a simple contract, (ii) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms, or (iv) discharge of the obligor in insolvency proceedings;

(c) Except as stated in subsection (d), in an action to enforce the obligation of a party to pay the instrument, the obligor may not assert against the person entitled to enforce the instrument a defense, claim in recoupment, or claim to the instrument (Section 3-306) of another person, but the other person's claim to the instrument may be asserted by the obligor if the other person is joined in the action and personally asserts the claim against the person entitled to enforce the instrument. An obligor is not obliged to pay the instrument if the person seeking enforcement of the instrument does not have rights of a holder in due course and the obligor proves that the instrument is a lost or stolen instrument.

§ 3-305. TRANSFER OF INSTRUMENT: RIGHTS ACQUIRED BY TRANSFER

(b) Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a

transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument.

Case Law

*Pacific Concrete F.C.U. V. Kauanoe*, 62 Haw. 334, 614 P.2d 936 (1980),

*GE Capital Hawaii, Inc. v. Yonenaka,* 25 P.3d 807, 96 Hawaii 32, (Hawaii App 2001),

*Fooks v. Norwich Housing Authority*, 28 Conn. L. Rptr. 371, (Conn. Super.2000), and

*Town of Brookfield v. Candlewood Shores Estates, Inc.* 513 A.2d 1218, 201 Conn.1 (1986).

*Solon v. Godbole*, 163 Ill. App. 3d 845, 114 Ill. Dec. 890, 516 N. E.2d 1045 (3Dist. 1987).

*Staff Mortgage. & Inv. Corp.*, 550 F.2d 1228 (9th Cir 1977). "Under the Uniform Commercial Code, the only notice sufficient to inform all interested parties that a security interest in instruments has been perfected is actual possession by the secured party, his agent or bailee.